## DISTRICT COURT OF THE UNITED STATES VIRGIN ISLANDS
## DIVISION OF ST. CROIX

ZURICH AMERICAN INSURANCE COMPANY,
as subrogee of Diageo USVI, Inc., and
DIAGEO USVI, INC., individually,

    Plaintiffs,                            Case No.: SX-17-CV-_____

    vs.                                    ACTION FOR DAMAGES

POLARIS ENGINEERING, INC.;
ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L.,
d/b/a E&M Combustion; and
RAUL CABADAS, individually,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, by and through their undersigned counsel, hereby sue Defendants, POLARIS ENGINEERING, INC.; ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion; and RAUL CABADAS, individually, and allege as follows:

## JURISDICTION AND VENUE

1.    Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY ("Zurich American"), as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, ("Diageo") bring this Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

2.     Venue is proper before this court pursuant to 28 U.S.C. § 1319(b), wherein the acts giving rise to this action occurred in this district, the property that is subject to the action is located in this district, and the Defendants transact business in this district.

## PARTIES

3.     At all times material to this action, Plaintiff, Zurich American was and is a corporation organized under the laws of New York, in good standing, and is a licensed insurance company in the United States Virgin Islands.   Zurich American has its principal place of business at 1299 Zurich Way, in Schaumburg, Illinois.

4.     Plaintiff, Diageo is a company incorporated in the United States Virgin Islands, with its principal place of business located at Estate Annaberg & Shannon Grove, Kingshill, in St. Croix, United States Virgin Islands.  At all times material hereto, Diageo was engaged in business in St. Croix, United States Virgin Islands.  Diageo's primary business purpose is the operation of a rum distillery on St. Croix, Virgin Islands ("the Distillery").

5.     At all times material to this action, Plaintiff, Zurich American insured Diageo for certain risks, including, but not limited to, Diageo's property and business operations associated with the Distillery.  The subject insurance contract is incorporated herein by reference, and will be provided to Defendants upon request.  As a result of the events described in this Complaint, Zurich American, became obligated to pay, and did pay insurance proceeds, to and/or on behalf of Diageo.

6.     Defendant, POLARIS ENGINEERING, INC. ("Polaris") is a Louisiana corporation with its principal place of business located at 212 Pine Street, in Lake

Charles, Louisiana. At all times material hereto, Polaris was engaged in business in St. Croix, United States Virgin Islands. Polaris' primary business purpose is to provide full service engineering, design, and consulting services, mainly to the refining, petrochemical and other heavy industries worldwide.

7.      Defendant, ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion ("E&M") is a Spanish company with its principal place of business located at Polígono Industrial Bildosola P.F.3 / P.F.4, 48142 Artea-Arantzazu, in Vizcaya, Spain. At all times material hereto, E&M was engaged in business in St. Croix, United States Virgin Islands. E&M's primary business purpose is to design, manufacture, install, and maintain industrial combustion equipment and burners.

8.      Defendant, RAUL CABADAS, individually, ("Mr. Cabadas") is a Spanish citizen. At all times material hereto, Mr. Cabadas was engaged in business in St. Croix, United States Virgin Islands. To Plaintiffs' knowledge and belief, Mr. Cabadas is the Head of Technical Service under the employment of E&M.

## FACTUAL ALLEGATIONS

9.      The Distillery includes two back-up boilers, which are designated "Boiler-1" and "Boiler-2," respectively, which previously were only capable of burning diesel fuel and biogas.

10.     In late 2013, Diageo elected to convert Boiler-1 and Boiler-2 from using diesel to Liquefied Petroleum Gas/propane (the "Conversion Project"). Once the Conversion Project was complete, the boilers could use either type of fuel, i.e., diesel or Liquefied Petroleum Gas/ propane ("LPG"), as a source of fuel for operation.

11.     Pursuant to a purchase order dated June 11, 2015 ("the Purchase Order"), Diageo retained Polaris to "install all equipment" associated with the Conversion Project.  A copy of the Purchase Order is attached hereto as Exhibit "A."

12.     As part of the Conversion Project, Polaris was required to reconfigure existing propane piping to both boilers, and certain existing boiler system instrumentation was required to be replaced.  Additionally, as part of the Conversion Project, Polaris installed certain safety shut-off butterfly valves, as described in greater detail herein.

13.     Pursuant to certain submittals addressed to Polaris (collectively "the E&M Submittals"), certain boiler conversion equipment was purchased from E&M by Diageo. The E&M Submittals are attached hereto as Exhibit "B."

14.     Also, pursuant to the E&M Submittals, E&M was to provide a worker, i.e., Mr. Cabadas, to perform all the on-site work at the Distillery on behalf of E&M for the Conversion Project.

15.     Boiler-2's system controller included a certain safeguard called a "Gas Safety Valve Proving Sequence" ("VPS"), which was enabled on the date of Boiler-2's initial installation at the Distillery in 2010.

16.     On or about September 12, 2015, Polaris, E&M and/or Mr. Cabadas turned the VPS relative to Boiler-2's controller "off."

17.     On or about December 15, 2015, the conversion for the use of LPG relative to Boiler-1 and Boiler-2 was complete, and Mr. Cabadas was performing certain precautionary measures prior to starting up and commissioning the boilers.  Also present, at that time, was a representative from Polaris.

4

18.    After the safety measures were completed, Mr. Cabadas commissioned Boiler-1 without incident.

19.    Subsequently, on December 15, 2015, Mr. Cabadas began the commissioning of Boiler-2; however, during the commissioning of Boiler-2, Mr. Cabadas indicated that there were issues relative to the pressure in the LPG line that was feeding the propane to Boiler-2.

20.    Mr. Cabadas and/or the Polaris representative decided to make certain modifications relative to the pressure in the LPG line.

21.    Thereafter, Mr. Cabadas went to re-commence the start-up sequence, and an explosion emanating from Boiler-2 ensued.

22.    Subsequently, Zurich American retained an engineer to conduct a forensic investigation relative to the cause of the explosion.   During the course of the investigation, it was determined that certain safety shut-off butterfly valves installed by Polaris during the course of its work on the Conversion Project were installed  at an improper orientation.

23.    The improper installation of the subject valves in the aforementioned manner caused the valves to be open when the system's mechanical indicators showed the valves to be in a closed position.

24.    The explosion was caused, in pertinent part, by the improper installation of the subject valves and/or the disablement of the VPS safeguard in the Boiler-2 controller.

25.    The explosion caused significant damage to Boiler-2, as well as the Distillery's "Reverse Osmosis System" ("RO System"), which was located in the vicinity of Boiler-2.

26.    As a result of the aforementioned damages, Zurich American paid insurance proceeds to, or on behalf of, Diageo per the terms of the insurance contract.

27.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo to the extent of Zurich American's insurance payments.

28.    Additionally, Diageo has suffered uninsured damages by way of its deductible.

29.    All conditions precedent to the bringing of this action have occurred, have been met, or have been waived.

**COUNT I**
**BREACH OF CONTRACT AGAINST POLARIS**

30.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

31.    Pursuant to the Purchase Order Terms and Conditions attached hereto as Exhibit "A," Polaris had a duty to:

   a. Perform its services and provide the products relative to the Conversion Project in strict conformance with the specifications, instructions, drawings designs or other descriptions furnished to Polaris and intended by Diageo to describe the desired products and services;

   b. Perform its services and provide the products associated with the Conversion Project in compliance with the standards of diligence, skill and care normally exercised by similarly qualified and competent persons in the performance of comparable work in accordance with best industry practices;

    c. Perform its services and provide the products associated with the Conversion Project in a manner that would fulfill the purposes intended by Diageo; and,

    d. Ensure that the software utilized relative to the products and services associated with the Conversion Project would be free of malicious instructions, techniques or devices capable of disrupting, disabling, damaging or shutting down a computer system or hardware component thereof.

32.    Polaris breached the foregoing duties, by failing to perform its work and provide the products associated with the Conversion Project in a manner that would not allow for an explosion and damage to Diageo's property; including, but not limited to Polaris' improper installation of the valves as described in Paragraphs 22 and 23, *supra*, and its failure to ensure that the VPS safeguard in the Boiler-2 controller was enabled during the startup process of Boiler-2 on the subject date of loss.

33.    Polaris further breached this duty by failing to properly hire and supervise its agents, employees, contractors and workmen to ensure that they were performing the work and providing the products associated with the Conversion Project in a proper and workmanlike manner, and in compliance with the duties detailed in Paragraph 31, *supra*.

34.    As a direct and proximate cause of Polaris' breach of the aforementioned duties detailed in Paragraph 31, *supra*, the Distillery sustained significant physical damage.

35.    As a direct and proximate consequence of Polaris' breach of the aforementioned duties detailed in Paragraph 31, *supra*, Zurich American was required to make payments of insurance proceeds to, or on behalf of, its insured, Diageo, and thus, Zurich American has been damaged by Polaris' conduct, as outlined herein.

36.    Additionally, as a direct and proximate consequence of Polaris' breach of the aforementioned duties detailed in Paragraph 31, *supra*, Diageo suffered uninsured damages by way of its deductible.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, POLARIS ENGINEERING, INC., for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST POLARIS

37.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

38.    On or about December 15, 2015, Boiler-2 was being used in the manner for which it was intended, i.e., as a boiler capable of operating with LPG.

39.    Defendant, Polaris, as a merchant and installer with respect to the goods and services associated with the boiler Conversion Project, as described above, impliedly warranted that Boiler-2 was merchantable and fit for the ordinary purposes for which it was intended, i.e., as a boiler capable of operating with LPG.

40.    In purchasing the services and products associated with the Conversion Project from Polaris, as described above, Diageo relied on the implied warranty of merchantability.

41.    Defendant, Polaris breached the implied warranty of merchantability in that the Conversion Project was defective, since it included improperly installed valves and the VPS safeguard in the Boiler-2 controller was disabled.

8

42.    As a direct and proximate result of Polaris' breach of the implied warranty of merchantability, there was an explosion at the Distillery, and Diageo's equipment and contents therein, incurred significant damages.

43.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

44.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo, to the extent of Zurich American's insurance payment(s) related to the subject claim.

45.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, POLARIS ENGINEERING, INC., for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST POLARIS

46.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

47.    As indicated *supra*, Diageo purchased services and products associated with the Conversion Project from Polaris pursuant to the Purchase Order attached hereto as Exhibit "A."

9

48.     On or about December 15, 2015, Boiler-2 was being used in the manner for which it was intended, i.e., as a boiler capable of operating with LPG, and an explosion occurred.

49.     At the time that Diageo purchased the services and products associated with the Conversion Project as described herein, Diageo informed Polaris that Boiler-2 was expected to be operational using LPG as a source of fuel, and Diageo was relying on Polaris' skill and judgment in providing services and products suitable for that purpose.

50.     In retaining Polaris to provide the services and products described above, Diageo relied on Polaris' skill and judgment in providing a boiler system capable of operating using LPG, and in a manner that would not cause an explosion and/or damage to the Distillery.

51.     As a result of the matters alleged above, Polaris impliedly warranted that Boiler-2 would be fully operational using LPG fuel as part of the Conversion Project, and that such use could be achieved in a manner that would not cause an explosion and/or damage to the Distillery.

52.     Defendant, Polaris breached the implied warranty of fitness described above, in that the Conversion Project was defective, since it included improperly installed valves and the VPS safeguard in the Boiler-2 controller was disabled.

53.     As a direct and proximate result of Polaris' breach of the implied warranty of fitness, there was an explosion at the Distillery, and Diageo's equipment and contents therein, incurred significant damages.

54.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

55.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo, to the extent of Zurich American's insurance payment(s) related to the subject claim.

56.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, POLARIS ENGINEERING, INC., for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

## COUNT IV:
## BREACH OF CONTRACT AGAINST E&M

57.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

58.    Pursuant to its agreement with Diageo, E&M had a duty to perform its work associated with the Conversion Project and all of its work, including, but not limited to, its work on or about September 12, 2015, at the Distillery in a proper and workmanlike manner, and in such a way as to not cause an explosion and/or damage to the Distillery.

59.    Defendant, E&M breached its duties by failing to properly perform its services associated with the Conversion Project and work at the Distillery, including, but

not limited to, disabling the VPS safeguard in the Boiler-2 controller, and/or failing to properly startup and commission Boiler-2 on or about December 15, 2015.

60.    As a direct and proximate cause of E&M's breach of the aforementioned duties detailed in Paragraph 58, *supra*, the Distillery sustained significant physical damage.

61.    As a direct and proximate consequence of E&M's breach of the aforementioned duties detailed in Paragraph 58, *supra*, Zurich American was required to make payments of insurance proceeds to, or on behalf of, its insured, Diageo, and thus, Zurich American has been damaged by E&M's conduct, as outlined herein.

62.    Additionally, as a direct and proximate consequence of E&M's breach of the aforementioned duties detailed in Paragraph 58, *supra*, Diageo suffered uninsured damages by way of its deductible.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion, for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

## COUNT V:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST E&M

63.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

64.    On or about December 15, 2015, Boiler-2 was being used in the manner for which it was intended, i.e., as a boiler capable of operating with LPG.

65.    Defendant, E&M, as a merchant and installer with respect to the goods and services associated with the boiler Conversion Project, as described above, impliedly warranted that Boiler-2 was merchantable and fit for the ordinary purposes for which it was intended, i.e., as a boiler capable of operating with LPG.

66.    In purchasing the services and products associated with the Conversion Project from E&M, as described above, Diageo relied on the implied warranty of merchantability.

67.    Defendant, E&M breached the implied warranty of merchantability in that the Conversion Project was defective, since the VPS safeguard in the Boiler-2 controller was disabled and Boiler-2 experienced an explosion during startup/commissioning.

68.    As a direct and proximate result of E&M's breach of the implied warranty of merchantability, there was an explosion at the Distillery, and Diageo's equipment and contents therein, incurred significant damages.

69.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

70.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo, to the extent of Zurich American's insurance payment(s) related to the subject claim.

71.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand

judgment against Defendant, ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion, for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

### COUNT VII
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST E&M

72.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

73.    On or about December 15, 2015, Boiler-2 was being used in the manner for which it was intended, i.e., as a boiler capable of operating with LPG, and an explosion occurred.

74.    At the time that Diageo purchased the services and products associated with the Conversion Project as described herein, Diageo informed E&M that Boiler-2 was expected to be operational using LPG as a source of fuel, and Diageo was relying on E&M's skill and judgment in providing services and products suitable for that purpose, i.e., as a boiler capable of operating with LPG, and an explosion occurred.

75.    In retaining E&M to provide the services and products described above, Diageo relied on E&M's skill and judgment in providing a boiler system capable of operating using LPG, and in a manner that would not cause an explosion and/or damage to the Distillery.

76.    As a result of the matters alleged above, E&M impliedly warranted that Boiler-2 would be fully operational using LPG fuel as part of the Conversion Project, and that such use could be achieved in a manner that would not cause an explosion and/or damage to the Distillery.

77.    Defendant, E&M breached the implied warranty of fitness described above, in that the Conversion Project was defective, since the VPS safeguard in the Boiler-2 controller was disabled and Boiler-2 experienced an explosion during startup/commissioning.

78.    As a direct and proximate result of E&M's breach of the implied warranty of fitness, there was an explosion at the Distillery, and Diageo's equipment and contents therein, incurred significant damages.

79.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

80.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo, to the extent of Zurich American's insurance payment(s) related to the subject claim.

81.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion, for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

**COUNT IV:**
**NEGLIGENCE AGAINST E&M**
**(Claim in the alternative)**

82.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

83.    At all times material to this Complaint, Defendant, E&M had a duty to perform its work associated with the Conversion Project and all of its work, including, but not limited to, its work on or about September 12, 2015, at the Distillery in a proper and workmanlike manner, and in such a way as to not cause an explosion and/or damage to the Distillery.

84.    Defendant, E&M breached its aforementioned duties by negligently and carelessly performing its services at the Distillery, including, but not limited to, disabling the VPS safeguard in the Boiler-2 controller, and/or failing to properly startup and commission Boiler-2 on or about December 15, 2015.

85.    As a direct and proximate result of the negligence of E&M as described above, an explosion occurred at the Distillery, and the equipment and contents therein, incurred significant damages.

86.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

87.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo to the extent of Zurich American's insurance payment(s) related to the subject claim.

88.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, ENERGIA Y MEDIOAMBIENTE COMBUSTION S.L., d/b/a E&M Combustion, for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

### COUNT VIII:
### NEGLIGENCE AGAINST MR. CABADAS

89.    Plaintiffs re-adopt and re-allege the allegations contained in paragraphs 1 through 29, as if fully set forth herein.

90.    As the technician working at the Distillery on behalf of E&M, Mr. Cabadas owed Diageo a duty to perform all of his work at the Distillery in a proper and workmanlike manner, and in such a way as to not cause an explosion and/or damage to the Distillery.

91.    Defendant, Mr. Cabadas breached his aforementioned duties by negligently and carelessly performing his services at the Distillery, including, but not limited to, disabling the VPS safeguard in the Boiler-2 controller, and/or failing to otherwise properly startup and/or commission Boiler-2 on or about December 15, 2015.

92.    As a direct and proximate result of the negligence of Mr. Cabadas as described above, an explosion occurred at the Distillery, and the equipment and contents therein, incurred significant damages.

93.    As a result of the aforementioned damages, Zurich American paid property insurance proceeds to, or on behalf of, Diageo per the terms of its insurance contract.

94.    As a result of the aforementioned payments, Zurich American is subrogated to the rights of Diageo to the extent of Zurich American's insurance payment(s) related to the subject claim.

95.    Additionally, as a result of this explosion, Diageo also suffered a deductible loss not covered by the insurance contract with Zurich American.

WHEREFORE, Plaintiffs, ZURICH AMERICAN INSURANCE COMPANY, as subrogee of Diageo USVI, Inc., and DIAGEO USVI, INC., individually, demand judgment against Defendant, RAUL CABADAS, individually, for damages, pre-judgment interest, attorney's fees and costs, and for such other and further relief the Court deems just and proper.

DATED:        December 8, 2017.              Respectfully submitted,

/s/ Joel H. Holt
Joel H. Holt, Esq., VI Bar No. 6
2132 Company Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 773-8709/ Fax: (340) 773-8677
joelholtpc@gmail.com

/s/Scott S. Katz, Esq.*
Florida Bar No.: 0709476
/s/Aaron M. Jacobs, Esq.*
Florida Bar No. 0896098
Primary Email: skatz@butlerpappas.com;
ajacobs@butlerpappas.com
Secondary Email: eservice@butlerpappas.com
Secondary Email: belisario@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ
CRAIG LLP
777 S. Harbour Island Boulevard, Suite 500
Tampa, FL 33602
Tel: (813) 281-1900/ Fax: (813) 281-0900
*Attorneys for Plaintiffs*

*Motion an application for admission pro hac vice to be
filed.*